UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| Nicole Cota, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    - against -<br><br>Ralph Lauren Corporation,<br><br>        Defendant | 1:21-cv-01089<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Ralph Lauren Corporation ("defendant") manufactures, labels, markets, and sells clothing purporting to contain a specific amount and/or percentage of pima cotton under the Polo and Ralph Lauren brands ("Product").

## I. IDENTIFYING FIBERS

2. Clothing is required to accurately disclose fiber composition under the Textile Fiber Products Identification Act ("Textile Act"), 15 U.S.C. §§ 70, *et seq. See also* 16 C.F.R. Part 303.

3. The main criteria to identify the type of cotton or other fiber is the fiber length.

4. The length of cotton fibers affects its qualities and price – the longer the fiber, the stronger, softer, and more durable the resulting fabric, and it costs more.

5. Pima cotton (*Gossypium barbadense L*) refers to extra-long staple ("ELS") cotton, which is between approximately 1.2 and 1.44 inches.[1]

6. Products made from pima cotton are costlier than those from shorter types of cotton.

---

[1] ASTM International, D7641, Standard Guide for Textile Fibers.

7. This creates incentives for manufacturers and suppliers to mix cotton byproducts and shorter fibers with higher value longer fibers, to gain additional profits at the expense of consumers.

8. However, the "Single-Fiber-Test" adopted by ASTM, a global standards body, can determine the length and length distribution of fibers used clothing.[2]

## II. THE PRODUCT CONTAINS LESS PIMA COTTON THAN PROMISED

9. Plaintiff purchased one or more clothing items under Defendant's brands, which purported to contain a certain percentage of pima cotton.

10. Laboratory analysis of the Product and/or substantially similar products was performed in accordance with the ASTM D5103 standard.

11. The results revealed that between most, and all fibers were shorter than 1.200 inches (30.48 mm) and shorter than 1.080 inches (27.432 mm), below the range for pima cotton.

12. Even where an adjustment is made to the fiber lengths by assuming a twenty-five (25) percent reduction during the manufacturing, approximately fifty (50) percent of the fibers would fall under the pima classification.

13. These results support the strong inference that the percentage of pima cotton used in the Product is significantly less than the amount indicated on the label and tag.

14. The Product contains a significant amount of less expensive, shorter cotton fibers and/or cotton byproduct fibers.

15. No reasonable consumer will expect that clothing advertised as containing a percent or amount of pima cotton would contain significantly less pima cotton than promised.

16. Whether a product contains the amount and/or percent of pima cotton indicated is

---

[2] D5103.

basic information consumers rely on when making decisions at the store.

17. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

18. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

19. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

20. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

21. The Product is sold for a price premium compared to other similar products, no less than approximately $34.99, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

22. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

23. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

24. Plaintiff Nicole Cota is a citizen of Wisconsin.

25. Defendant Ralph Lauren Corporation is a Delaware corporation with a principal place of business in New York, New York County, New York.

26. Plaintiff and defendant are citizens of different states.

27. Venue is in this district because plaintiff resides in this district and the actions giving

rise to the claims occurred within this district.

28. Venue is in the Green Bay Division because plaintiff resides in Manitowoc County, which is where the events giving rise to the present claims occurred.

Parties

29. Plaintiff Nicole Cota is a citizen of Manitowoc, Manitowoc County, Wisconsin.

30. Defendant Ralph Lauren Corporation, is a Delaware corporation with a principal place of business in New York, New York, New York County.

31. Defendant is one of the largest sellers of clothing in the world.

32. Defendant's products are sold from its own stores and outlets, third-parties such as T.J. Maxx, Kohl's, Macy's, and available online.

33. Defendant's brand is synonymous with the highest quality, so that consumers trust the representations it makes.

34. Manufacturers of textile products, like Defendant, must maintain records sufficient to substantiate the claims on its fiber content tags and labels. See *id*. at §70d.

35. Any guarantee of fiber content by a supplier is insufficient for Defendant to rely on when selling clothing to the public. *See* 16 C.F.R. § 303.39.

36. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including T.J. Maxx, 4421 Dewey St, Manitowoc, WI 54220, between September 2019 and September 2020, among other times.

37. Plaintiff bought the Product because she expected it would contain the amount and/or percent of pima cotton it indicated, and not a significant percentage less.

38. Plaintiff did not expect the Product to contain a significant percent less of pima cotton.

39. Plaintiff knew that Defendant was a brand with an established reputation for quality and expected it would live up to its word on the Product's composition.

40. Plaintiff bought the Product at or exceeding the above-referenced price.

41. Plaintiff relied on the representations identified here.

42. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

43. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

44. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

45. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

46. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Wisconsin Class:** All persons in the State of Wisconsin who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[3]

47. Common questions of law or fact predominate and include whether defendant's

---

[3] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

representations were and are misleading and if plaintiff and class members are entitled to damages.

48. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

49. Plaintiff is an adequate representative because her interests do not conflict with other members.

50. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

51. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

52. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

53. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Wisconsin Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.18</u>

<u>(Consumer Protection Statute)</u>

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Plaintiff and class members desired to purchase a product that contained the amount and/or percent of pima cotton indicated and not a significant amount or percent less.

56. Defendant's false and deceptive representations and omissions about the percentage and/or amount of pima cotton in its products are material in that they are likely to influence consumer purchasing decisions.

57. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

58. Defendant's conduct violates Wis. Stat. § 100.18(1), which provides that no "firm,

corporation or association … with intent to sell, distribute, increase the consumption of … any… merchandise … directly or indirectly, to the public for sale … shall make, publish, disseminate, circulate, or place before the public … in this state, in a … label … or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public … which … contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

59. Plaintiff "suffer[ed] pecuniary loss because of a violation" by Defendant of 100.18. Wis. Stat. § 100.18(11)(b)(2).

60. Plaintiff relied on the representations.

61. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

62. Plaintiff is entitled to damages, including "costs, including reasonable attorney fees," and other relief which the court deems proper. Wis. Stat. § 100.18(11)(b)(2).

63. Plaintiff is entitled to punitive damages. Wis. Stat. § 100.20(5).

## Violation of State Consumer Fraud Acts
### (On Behalf of the Consumer Fraud Multi-State Class)

64. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

65. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

66. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State

Class, have sustained damages in an amount to be proven at trial.

67. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

68. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained the amount and/or percent of pima cotton indicated and not a significant amount or percent less.

69. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

70. This duty is based on Defendant's outsized role in the market for this type of product.

71. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

72. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

73. The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

74. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

75. Defendant had a duty to truthfully represent the Product, which it breached.

76. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians and owners of the Ralph Lauren brand, known

for the highest quality clothing.

77. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

78. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

79. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

80. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained the amount and/or percent of pima cotton indicated and not a significant amount or percent less.

81. Defendant possesses specialized knowledge regarding the fiber content of its products and is in a superior position to learn about this.

82. Moreover, the records Defendant is required to maintain provide it with actual and/or constructive knowledge of the falsity of the representations.

83. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

84. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: September 19, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com