UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NICOLE COTA, individually and on
behalf of all others similarly situated,

        Plaintiff,

        v.        Case No. 21-C-1089

RALPH LAUREN CORPORATION,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff Nicole Cota, individually and on behalf of all others similarly situated, brought this putative class action against Defendant Ralph Lauren Corporation (RLC), alleging that unidentified RLC products contain less pima cotton than RLC advertises. Based on little more than this vague allegation, Cota asserts claims for negligent misrepresentation, fraud, unjust enrichment, breach of express warranty, breach of the implied warranty of merchantability, and violations of the Wisconsin Deceptive Trade Practices Act (WDTPA), Wis. Stat. § 100.18, the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-107, the Iowa Consumer Fraud Act, Iowa Code § 714.16, and the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. The Court has jurisdiction over this matter under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). Before the Court is Defendant's motion to dismiss the complaint. For the following reasons, the motion will be granted.

### LEGAL STANDARD

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. Rule 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, the Supreme Court clarified the standard for meeting this requirement, emphasizing the need for something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. 544, 555 (2007), or "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. 662, 678 (2009), before the doors to expensive and time-consuming discovery will be opened. In so ruling, the Court explicitly rejected the standard commonly attributed to *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), to the effect that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561–63. Though the Court recognized in *Twombly* the need for caution before dismissing a case at the pleading stage before discovery has begun, it noted that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." 550 U.S. at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)). The Court therefore held that it was not enough to allege the mere possibility of a claim.

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations

must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is entitled to relief. *Id.*

Additionally, in cases alleging fraud or mistake, a heightened pleading standard applies. Fed. R. Civ. P. 9(b). The party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." *Id.* This requirement is designed to "to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (quoting *Berman v. Richford Indus., Inc.*, 1978 WL 1104, at *5 (S.D.N.Y. July 28, 1978)). It "'forces the plaintiff to conduct a careful pretrial investigation' and minimizes the risk of extortion that may come from a baseless fraud claim." *Id.* (quoting *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir. 2003)). Ordinarily, this heightened pleading standard means that "a plaintiff must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Id.* at 441–42 (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)).

## ALLEGATIONS IN THE COMPLAINT

According to the complaint, the main criteria to identify cotton is the length of the fiber. Compl. ¶ 3, Dkt. No. 1. As fiber length increases, so too does the cotton's strength, softness, durability, and of course, cost. *Id.* at ¶ 4. The type of cotton at issue here, "pima cotton," known scientifically as *Gossypium barbadense L*, refers to "extra-long staple" cotton, a costlier type of cotton compared to those with shorter fiber lengths. *Id.* at ¶¶ 5–6. Because pima cotton is more

3

expensive, Cota claims, it creates "incentives for manufacturers and suppliers to mix cotton byproducts and shorter fibers with higher value long fibers, to gain additional profits at the expense of consumers." *Id.* at ¶ 7. A test exists, however, to determine the length and length distribution of fibers used in clothing, such that the types of cotton used can be identified. *Id.* at ¶ 8.

Cota alleges that, sometime between September 2019 and September 2020, she purchased "one or more clothing items under [RLC's] brands, which purported to contain a certain percentage of pima cotton," at stores "including T.J. Maxx" in Manitowoc, Wisconsin. *Id.* at ¶¶ 9, 36. According to the complaint, "[l]aboratory analysis of the Product and/or substantially similar products was performed in accordance with the ASTM D5103 standard." *Id.* at ¶ 10. The analysis allegedly revealed that "all fibers were shorter than 1.200 inches . . . and shorter than 1.080 inches," making them "below the range for pima cotton." *Id.* at ¶¶ 10–11. In other words, the products alleged to have been tested contained "significantly less" pima cotton than indicated on the label and tag. *Id.* at ¶¶ 13–14.

As a result, Cota alleges that the product she purchased was worth "materially less than its value as represented" by RLC and that RLC sold more of the product "at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of customers." *Id.* at ¶¶ 18–19. Cota asserts that, had she and the proposed class members known the truth, "they would not have bought the product or would have paid less for it." *Id.* at ¶ 20. Instead, Cota claims, she purchased the product at a premium price compared to other similar products, "no less than approximately $34.99, a higher price than it would otherwise be sold for, absent the misleading representations and omissions." *Id.* at ¶ 21. Therefore, Cota seeks relief based on RLC's allegedly deceptive and misleading statements with respect to the amount of pima cotton in its products.

## ANALYSIS

### A. Deceptive Trade Practices Claims

Cota asserts that RLC's actions violate Wisconsin's Deceptive Trade Practices Act (WDTPA), Wis. Stat. § 100.18. Compl. ¶¶ 54–63. To prevail on a § 100.18 claim, Cota must prove three elements: "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) that the representation was untrue, deceptive or misleading, and (3) that the representation caused the plaintiff a pecuniary loss." *Novell v. Migliaccio*, 2008 WI 44, ¶ 44, 309 Wis. 2d 132, 749 N.W.2d 544. RLC asserts that Cota has failed to state a plausible claim for relief under the WDTPA. Dkt. No. 9 at 6–8. The Court agrees. The majority of Cota's complaint contains equivocal and vague allegations that do not allow the Court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678.

For example, Cota alleges that she purchased "one or more" items manufactured by RLC and that these items "purported to contain a certain percentage of pima cotton." Compl. ¶ 9. Nowhere in her complaint, however, does Cota identify the article, or articles, of clothing she purchased, what the tag or label represented with respect to its pima cotton content, or how much pima cotton the article of clothing lacked in comparison to the representation on its tag or label. Furthermore, Cota's complaint alleges that "[l]aboratory analysis of the Product and/or substantially similar products" revealed that "all fibers" were below the range for pima cotton. *Id.* at ¶¶ 10–11. This allegation is equivocal at best. It appears that Cota herself is unsure whether the product she purchased was included in this notably unattached laboratory analysis that purports to demonstrate a deficiency of pima cotton.

In short, Cota offers purely speculative allegations that fail to establish anything more than the mere possibility of misconduct. She does not identify the product she purchased, or what

specific representation RLC made with respect to that product. She also fails to assert that the product was tested and conflicted with a specific representation made by RLC. Without such allegations, Cota has failed to plausibly allege that RLC "made a representation to the public with an intent to an induce an obligation" or that any such representation was "untrue, deceptive or misleading." *Novell*, 309 Wis. 2d 132, ¶ 44.

The same is true of Cota's claims under other state consumer fraud acts. Cota seeks to certify a class of individuals from Iowa and Arkansas, but under each state's respective act, Cota also fails to state a claim. Compl. ¶ 46. Under Arkansas' Deceptive Trade Practices Act (ADTPA), Cota would again need to plausibly allege that RLC knowingly made a false representation with respect to the article of clothing. Ark. Code Ann. § 4-88-107(a)(1). And under Iowa's Consumer Fraud Act, Cota would need to plausibly allege that RLC made a misrepresentation of material fact with the intent that others rely upon it in connection with the sale of merchandise. Iowa Code § 714.16(2)(a). As explained above, Cota has failed to plausibly allege that RLC did either of these things. Instead, Cota offers conclusory allegations that unidentified RLC products contained an unspecified amount of pima cotton less than an unspecified amount represented by RLC, all discovered by an unspecified laboratory analysis. This is insufficient to establish "a right to relief above [a] speculative level." *Twombly*, 550 U.S. at 555. Therefore, Cota's WDTPA, ADTPA, and Iowa Consumer Fraud Act claims must be dismissed.

**B. Breach of Express Warranty and Implied Warranty of Merchantability**

Cota alleges that RLC breached its express and implied warranties under Wisconsin law. But the Court need not wade into the specifics of Cota's warranty claims because she failed to provide adequate notice of the purported breaches to RLC, as is required by Wisconsin law. Under Wis. Stat. § 402.607(3)(a), where a tender has been accepted, "[t]he buyer must within a reasonable

6

time after the buyer discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy." Cota seems to acknowledge this requirement; indeed, she alleges that she "provided or will provide notice to [RLC], its agents, representatives, and their employees." Compl. ¶ 71. RLC, recognizing yet another equivocal allegation, argues that Cota has left "open the possibility [that] she still has not given notice of RLC's alleged breach of warranty." Dkt. No. 9 at 12. In response, Cota argues that she complied with § 402.607(3)(a) by filing this action. Dkt. No. 12 at 16.

Various courts have held that § 402.607(3)(a), and its model counterpart, UCC 2-607, require *pre-suit* notice. *See, e.g.*, *Brame v. General Motors LLC*, 535 F. Supp. 3d 832, 839 (E.D. Wis. 2021); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 1042, 1055 n.10 (W.D. Wis. 2018). Indeed, the Wisconsin Supreme Court has recognized that this provision "seeks to eliminate an element of unfair surprise where a seller has not been informed that a situation is troublesome and, therefore, cannot take steps to correct it but only later has a lawsuit filed against him." *Paulson v. Olson Implement Co., Inc.*, 107 Wis. 2d 510, 523 n.8, 319 N.W.2d 855 (1982). "This is intended to 'open the way for settlement through negotiation between the parties' and permit the seller to 'investigate the claim while the facts are fresh, avoid defect in the future, minimize his damages, or perhaps assert a timely claim of his own against third parties.'" *Wilson v. Tuxen*, 2008 WI App 94, ¶ 41, 312 Wis. 2d 705, 754 N.W.2d 220 (quoting *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 972 (5th Cir. 1976)). "Thus, under Wisconsin law, service of summons and a complaint cannot function as the notice required" by § 402.607(3)(a). *Brame*, 535 F. Supp. 3d at 839. Because Cota failed to provide pre-suit notice of RLC's alleged breach, she is "barred from any remedy" under the code, and her warranty claims must be dismissed. Wis. Stat. § 402.607(3)(a).

7

### C. Magnuson Moss Warranty Act

Cota also brings claims under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. Under 15 U.S.C. § 2310(d)(1), "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." The term "written warranty" is defined as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6).

As described above, Cota has failed to plead with any level of specificity the warranty that RLC allegedly made. Again, Cota does not identify the product she purchased or the products that were supposedly tested, does not describe what representation RLC made with respect to the products, i.e., what percentage of pima cotton was incorporated into the product, and does not describe to what extent the actual pima cotton content in the product conflicted with the alleged warranty. The failure to provide these details does not allow the Court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678.

Insofar as Cota seeks to rely on the Magnuson Moss Warranty Act to claim a breach of an implied warranty, her claim fails. The Act defines "implied warranty" as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). But as detailed above, Cota's implied warranty claim under Wisconsin law fails because she failed to provide adequate pre-suit notice of the alleged breach. As such, she cannot state a claim under the Magnuson Moss Warranty Act. The Court also notes that, in Wisconsin,

8

an implied warranty "can only arise by implication where there is a contract between the parties." *Lamont v. Winnebago Indus., Inc.*, 569 F. Supp. 2d 806, 814 (E.D. Wis. 2008) (citing *Bushendorf v. Freightliner Corp.*, 13 F.3d 1024, 1027 (7th Cir. 1993)). Cota has not alleged in her complaint that there is any privity between her and RLC, and therefore, her implied warranty claim fails for this reason too. Therefore, Cota's claims under the Magnuson Moss Warranty Act must be dismissed.

### D. Negligent Misrepresentation

Next, Cota brings a claim for negligent misrepresentation against RLC. She asserts that RLC "had a duty to truthfully represent the Product, which it breached," and that the representations "took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in [RLC], a nationally recognized and trusted brand." Compl. ¶¶ 75–77. She alleges that she and the putative class members "reasonably and justifiably relied on" the representations, such that they were induced to purchase the product. *Id.* at ¶ 78.

In Wisconsin, the elements of negligent misrepresentation are: "(1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant was negligent in making the representation; and (4) the plaintiff believed that the representation was true and relied on it." *Malzewski v. Rapkin*, 2006 WI App 183, ¶ 20, 296 Wis. 2d 98, 723 N.W.2d 156. But this claim also suffers from Cota's failure to allege any particular facts regarding the product, the specific representation made, or how the alleged representation compares to the actual product. As has already been described at length above, Cota's allegations do not allow the Court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678.

9

**E. Fraud**

To establish a claim for fraud in Wisconsin, Cota must demonstrate (1) a false representation; (2) an intent to defraud; (3) reliance upon the false representation; and (4) damages. *Mackenzie v. Miller Brewing Co.*, 2001 WI 23, ¶ 18, 241 Wis. 2d 700, 623 N.W.2d 739. Furthermore, under Federal Rule of Civil Procedure 9(b), Cota must "state with particularity the circumstances constituting fraud or mistake." Certain components, such as malice, intent, knowledge, or other conditions of a person's mind "may be alleged generally." Fed. R. Civ. P. 9(b). In other words, a plaintiff claiming fraud "must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate," and as such, a complaint alleging fraud must provide "the who, what, when, where, and how." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks and citations omitted).

Cota argues that she has satisfied Rule 9(b)'s stringent standard. She claims that the "who" is RLC, the "what" includes the representations with respect to pima cotton on the clothing, the "when" and "where" was between September 2019 and September 2020 at the T.J. Maxx in Manitowoc, Wisconsin, and the "how" involves the fibers of the product being below the range for pima cotton. Dkt. No. 12 at 18. But this does not satisfy the particularity that Rule 9(b) demands. Again, Cota does not identify the product she purchased or the products that were supposedly tested, does not describe what representation RLC made with respect to the products, i.e., what percentage of pima cotton was incorporated into the product, and does not describe to what extent the actual pima cotton content in the product conflicted with the amount represented. These are the types of allegations necessary to satisfy Rule 9(b)'s pleading standard. Cota's

allegations are vague, and are, at best, designed to address the "who, what, where, when, and how" without providing any real detail. Therefore, Cota's fraud claim must be dismissed.

### F. Unjust Enrichment

Cota asserts that RLC "obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." Compl. ¶ 84. She includes these allegations, and only these allegations, under the heading "Unjust Enrichment." *Id.* "Under Wisconsin law, unjust enrichment requires proof of three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *T&M Farms v. CNH Indus. Am., LLC*, 488 F. Supp. 3d 756, 769 (E.D. Wis. 2020) (citing *Sands v. Menard*, 2017 WI 110, ¶ 30, 379 Wis. 2d 1, 904 N.W.2d 789).

But courts in this district have noted that "unjust enrichment involves getting something for nothing, not providing a product for a price." *Id.* (quoting *Weaver v. Champion Petfoods USA Inc.*, No. 18-CV-1996-JPS, 2019 WL 2774139, at *6 (E.D. Wis. July 1, 2019)) (internal quotation marks omitted); *see also Associated Banc-Corp v. John H. Harland Co.*, No. 06-C-1097, 2007 WL 128337, at *2 (E.D. Wis. Jan. 11, 2007). Here, Cota received a product for a price, and although she may have been disappointed with the product, that does not entitle her to continue with a claim for unjust enrichment. *See T&M Farms*, 488 F. Supp. 3d at 769 ("So, even if the products did not meet expectations, the plaintiffs received something in exchange for the benefit they conferred— the products plus the remedies available to them under the contracts they agreed to."). Therefore, Cota's claim for unjust enrichment must be dismissed.

## G. Injunctive Relief

The parties also briefly discuss Cota's standing to seek injunctive relief. But the Court has already concluded that all of her claims must be dismissed due to her inadequate pleading. Because Cota has failed to plausibly allege *any* violation that RLC may have committed, she is not entitled to injunctive relief. Furthermore, Cota cannot demonstrate that she is under threat of suffering an "injury in fact" that is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Cota asserts that she "intends to, seeks to, and will purchase the Product again when she can do so with the assurance that the Product's representations are consistent with its composition." Compl. ¶ 45. She argues that this constitutes an imminent threat of future harm that satisfies Article III's injury-in-fact requirement. Dkt. No. 12 at 19.

But Cota's statement is undermined by the fact that she indicates that she would only purchase the product again *with the assurance* that the products' representations are consistent with its composition. Because she currently believes that RLC's products contain less pima cotton than represented, there is no actual and imminent threat of future harm; she can simply avoid purchasing RLC products until she has been adequately assured that RLC's products contain exactly what they say they contain. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."). Because Cota has failed to adequately allege any claim against RLC, and because she has not demonstrated that she faces an actual and imminent threat of future harm based on RLC's alleged practices, she does not have standing to seek injunctive relief at this stage.

## CONCLUSION

For the foregoing reasons, RLC's motion to dismiss (Dkt. No. 8) is **GRANTED** and the complaint is dismissed. The dismissal is without prejudice, however, and Cota will be allowed thirty (30) days from the date of this order in which to file an amended complaint curing the defects noted herein. The parties are also invited to consider the question of subject matter jurisdiction if the case proceeds. Cota relies solely on 28 U.S.C. § 1332(d)(2) as her basis for jurisdiction. That statute provides, among other things, that the amount in controversy must exceed the sum or value of $5,000,000, exclusive of interests or costs. Although Cota includes the boilerplate language in her complaint that "the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interests and costs," Compl. ¶ 23, she provides no support for the assertion. The Seventh Circuit has recently suggested that more is required to assert jurisdiction under CAFA. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 733 (7th Cir. 2021); *see also Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (conclusory invocation of CAFA is insufficient to establish subject-matter jurisdiction without specific factual allegations; remanding for jurisdictional discovery).

**SO ORDERED** at Green Bay, Wisconsin this 19th day of May, 2022.

                                                                 s/ William C. Griesbach
                                                                 William C. Griesbach
                                                                 United States District Judge